MHN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GILL S. TALLUD, individually, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 6750 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| AIRCRAFT SERVICE ) | |
| INTERNATIONAL GROUP, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Gill S. Tallud ("Plaintiff") sued Aircraft Service International Group ("Defendant") for discrimination based on national origin under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1981. Currently before the Court is Defendant's Motion for Summary Judgment. The parties consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c) and N.D. Ill. R. 73.1. For the reasons stated below, the Court grants Defendant's motion.

### I. Background

**A. Propriety of Plaintiff's Response Under Local Rule 56.1**

Before reciting the facts, the Court must address Defendant's argument that its own N.D. Ill. R. 56.1 ("Local Rule 56.1") Statement of Facts "should be deemed admitted because they were not properly objected to by [Plaintiff]." (Def.'s Reply in Supp. of its Mot. Summ. J. ("Def.'s Reply") 2-3.)

In the Northern District of Illinois, Local Rules prescribe the procedures the parties must follow at various stages of a lawsuit. Local Rule 56.1 governs the summary-judgment stage. Relevantly, it requires the moving party to file "statement of material facts as to which the moving party contends there is no dispute." N.D. Ill. R. 56.1(a)(3). The party opposing the motion for summary judgment must file any opposing evidence referred to in FED. R. CIV. P. 56(e) and a supporting memorandum of law. N.D. Ill. R. 56.1(b)(1)-(2). The rule also requires the opposing party to file "a concise response to the movant's statement," which must contain

> (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
>
> (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Absent prior leave of Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

N.D. Ill. R. 56.1(b)(3)(A)-(C). The Seventh Circuit consistently has held that the district court may require strict compliance with Local Rule 56.1. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

Defendant's submission fails almost all of Local Rule 56.1's requirements–under both a liberal or strict reading. While Plaintiff filed a memorandum of law, he did little else. Plaintiff

did not file a separate statement of facts, instead filing responses to only select statements in the body of his memorandum of law. While these twelve sentences are numbered, they do not "[correspond] to and stat[e] a concise summary of the paragraph to which [they are] directed." N.D. Ill. R. 56.1(b)(3)(A). That is, the numbers Plaintiff provides do not correspond to the numbered statements in Defendant's Statement of Facts. (Pl.'s Opp'n to Def.'s Mot ("Pl.'s Opp'n") 2-4.)

Beyond that, Plaintiff fails to "includ[e], in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). Not once did Plaintiff cite *any* part of the record, leaving for the Court the task of using its judicial microscope to discover any factual disputes. Judges, however, are not cellular biologists: they need not arrange the parties' statements on a slide and use a microscope to determine whether traces of a factual dispute exist. *See, e.g., Ammons*, 368 F.3d at 817-18; *Contilli v. Local 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 724 (7th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Plaintiff failed to comply with Local Rule 56.1 when he did not submit an answer to Defendant's Statement of Facts with corresponding numbered responses, and when he failed to cite any part of the record to support his admissions or denials. For these reasons, the Court deems Defendant's facts admitted.

Additionally, and for these same reasons, the Court will not consider Plaintiff's affidavit, which he filed with his memorandum of law. If it did, then Local Rule 56.1 would have little effect, as parties could, helter skelter, submit affidavits and supporting evidentiary documents

without filing a proper statement of facts. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (stating that, if the court "considered the affidavits that were filed with [the plaintiff's summary judgment response[,] . . . then Local Rule[] [56.1] . . . would have no effect").

For these reasons, the Court deems admitted Defendant's statement of facts, and will not consider any factual assertions contained in Plaintiff's memorandum of law or any documents attached thereto.

### B.     Factual Background

Defendant is an aviation flight-service company that maintains facilities around the world, including Chicago's O'Hare International Airport ("O'Hare").[1] (Def.'s Statement of Undisputed Material Facts ("Def.'s SOF") ¶ 1.) At O'Hare, Defendant's facility performs duties related to aircraft quality control, such as inspections and maintenance to pipelines supplying fuel to aircrafts. (*Id.*) Defendant is subject to Air Transport Association ("ATA") 103 requirements, which govern the jet fuel quality control procedures at airports throughout the country. (*Id.* at ¶ 2.)

Defendant has employed Plaintiff—who is of Filipino descent—at its O'Hare facility since 1990, and it promoted him to Pipeline Systems Technician in 1993. (*Id.* at ¶ 4.) Although Lockheed was the entity that hired Plaintiff, AGI, in 1996, acquired Lockheed's fuel pipeline

---

[1] Lockheed Air Terminal, Inc. ("Lockheed") and Airport Group International ("AGI") preceded Defendant at O'Hare. All references to Defendant encompass these two groups and Defendant's predecessor's at O'Hare. (Def.'s SOF ¶ 3.) Where the Court refers to them separately, however, they represent separate entities.

servicing business at O'Hare; Defendant acquired AGI in 2004. (*Id.* at ¶ 5.) None of these changes affected Plaintiff's employment. (*Id.* at ¶ 5.)

Plaintiff's duties as a Pipeline Systems Technician include repair, maintenance, and inspection of the fuel system pipelines as well as delivering fuel to the airlines or de-fueling aircraft. (*Id.* at ¶ 9.) In July and August of 2006, Plaintiff had four immediate supervisors: John Huntsha, who is described as "American"; Nanad Lakic, who is of Serbian descent; Efran Manuel, who is of Filipino descent; and Joe Tiu, who is of Filipino descent. (*Id.* at ¶ 10.) These individuals, as well as Thomas Watt ("Watt")–who is described as "American"–are Plaintiff's supervisors currently. *Id.* at ¶ 10.) During his employment, Plaintiff received annual training on ATA 103 requirements, including on March 19, 2006. (*Id.* at ¶ 12.)

While Plaintiff has worked for Defendant for nearly 19 years, his performance has not always been exemplary. Plaintiff experienced recurring disciplinary issues while employed by Defendant. (*Id.* at ¶ 10.) On April 20, 2001, and October 12, 2001, Plaintiff fell asleep on his shift. As a result, Defendant suspended Plaintiff for five days. (*Id.* at ¶ 11.) Additionally, Defendant warned or disciplined Plaintiff for his more than thirty attendance violations since 2002. (*Id.*)

The events leading to the current lawsuit occurred in July of 2006. (*Id.* at ¶ 13.) At this time, Defendant posted an opening for a Pipeline Supervisor on a company bulletin board at its O'Hare facility. (*Id.* at ¶ 13.) The posting stated a description of the job duties, which included "[e]nsur[ing] all Quality Assurance procedures meet or exceed ATA 103 requirements." (*Id.* (quoting Tallud Dep. 37:11-38:19, April 23, 2009).)

Tallud, as well as several other individuals–Watt, Ricarte Nucup ("Nucup"), and Richard Norris ("Norris")–applied for this position by submitting their resumes to Operations Manager Michael Sheehan ("Sheehan"). (*Id.* at ¶¶ 14-15.) Sheehan and General Manager Michael Loveridge ("Loveridge") interviewed all of these applicants. (*Id.* at ¶ 15.) Loveridge and Sheehan asked all of these candidates the same fourteen questions during the interviews. (*Id.* at ¶ 16.) One of these questions was, "[a]re you familiar with ATA 103 inspection requirements?" (*Id.*) Plaintiff could not generally identify these requirements, but Watt could. (*Id.*)

Furthermore, Plaintiff had listed on his resume a degree from the Technical Institute of the Philippines. (*Id.* at ¶ 18.) During Plaintiff's interview, however, Defendant discovered that Plaintiff only took classes toward, but did not receive, such a degree. (*Id.* at ¶ 18.) Loveridge recorded this discrepancy on Tallud's resume. (*Id.*)

After conducting all of these interviews, Sheehan and Loveridge determined who should fill the position. Among the factors they considered were "attendance, experience, work performance, safety record, attitude, commitment to diversity, compliance level in meeting [Defendant's] service standards[,] and training and/or education." (*Id.* at ¶ 19.) On or about August 7, 2006, Loveridge and Sheehan decided that Watt was the most qualified applicant. (*Id.* at ¶ 20.) They determined that Watt possessed the best balance of skills for the job, and that Tallud did not. (*Id.* at ¶ 20.) In particular, they noted that Watt committed only one attendance violation while employed by Defendant, whereas Plaintiff, who had misrepresented his educational background, had over thirty. (*Id.* at ¶¶ 20-21.) Furthermore, they considered Watt's knowledge–and Tallud's lack of knowledge–of ATA 103 requirements. (*Id.* at ¶ 20.) As a result

of these considerations, Loveridge and Sheehan awarded Watt the Pipeline Supervisor position. (*Id.* at ¶ 22.)

Shortly after conducting the interviews, on or around August 7, 2006, Sheehan met with Tallud and informed him he did not receive the job. (*Id.* at ¶ 23.) While Tallud alleges that Sheehan informed him he did not receive the position because he failed to answer the "pipeline question," Plaintiff's deposition revealed that he could not specify what this meant. (*Id.*)

On August 22, 2006, upset that he did not receive the job, Plaintiff filed a charge ("the Charge") of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). This Charge alleged that Defendant did not promote Plaintiff because of his race (Filipino). (*Id.* at ¶ 25.) After the EEOC closed the case and issued a right to sue letter,[2] Plaintiff sued Defendant on October 24, 2008, alleging discrimination based on national origin. (*Id.*) Plaintiff believes he was not promoted was because he is Filipino. (*Id.*) Plaintiff, however, no longer seeks a position as a Pipeline Supervisor.

## II. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

---

[2] Plaintiff claims that the EEOC issued a Notice of a Right to Sue after finding evidence of discrimination. (Pl.'s Opp'n 2.) Since Plaintiff provided no documentation of this, the Court makes no finding as to this issue. In any event, the issue is immaterial to the resolution of this case.

(1986). The Court views all facts in the light most favorable to Williams and draws all justifiable inferences in his favor. *Anderson*, 477 U.S. at 255. Not all factual disputes will preclude summary judgment; rather, a genuine issue of material fact will exist only where there is evidence such that a jury "could reasonably find for the [nonmoving party]." *Id.* The parties may not rely on mere allegations or speculation in arguing for or against summary judgment. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008). At the summary judgment stage, both sides must support their factual assertions with "competent evidence of a type otherwise admissible at trial." *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

### III. Discussion

Plaintiff argues that Defendant discriminated against him based on his Filipino national origin when it failed to promote him to Pipeline Supervisor. Because Plaintiff presents no direct evidence–indeed, no evidence at all–of discrimination, the Court addresses briefly the indirect method of proving discrimination under Title VII and section 1983. To show discrimination under the indirect method of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the plaintiff must prove that "(1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably." *Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009). Proving a prima facie case creates a presumption of discrimination, which the defendant can rebut by "'produc[ing] a legitimate, noninvidious reason for its actions." *Id.* (quoting *Atanus v. Perry*, 520 F.3d 662, 672

(7th Cir. 2008)). "If the defendant rebuts the prima facie case, the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual." *Id.*

Working from the facts presented by Defendant–and assuming that Plaintiff is a member of a protected class (Filipino) who suffered adverse employment action (failure to promote)–the Court finds that Plaintiff cannot prove a prima facie case. The facts establish that Plaintiff was not meeting legitimate job expectations. Twice he fell asleep on his shift and was disciplined. Plaintiff also incurred more than thirty attendance violations. Looking "through the eyes of [Sheehan and Loveridge] at the time" when he was not promoted, the Court cannot see how these repeated disciplinary issues can be perceived as meeting expectations.[3] *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008)

Even if he were meeting those expectations, however, these same facts illustrate why Plaintiff failed to identify any "similarly situated" employees. Watt, the employee who was selected over Plaintiff for the Pipeline Supervisor position, had only one disciplinary action to his name–and he did not misrepresent his educational background, as Plaintiff did. Additionally, Watt was able to answer questions about the ATA 103 requirements. Thus, Watt did not share with Plaintiff "a comparable set of failings" and, therefore, was not similarly situated. *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

In sum, Plaintiff has failed to prove his prima facie case. Even assuming he is a member of a protected class and suffered an adverse employment action, he cannot show that Defendant

---

[3] While not part of his work duties per se, Plaintiff's misrepresentation of his educational background also cuts against the Court finding that he was meeting Defendant's legitimate expectations.

treated similarly situated individuals more favorably than him, or that he was meeting Defendant's job expectations.

Furthermore, since the Court has deemed as true all of Defendant's facts, Plaintiff has no argument that there is a genuine issue as to *any* fact. Thus, although the court briefly engaged in legal analysis, it need not have done so *at all* to grant Defendant's motion. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have also repeatedly upheld the strict enforcement of [the local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.") Therefore, the Court finds that there is no genuine issue of material fact, and that Defendant is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. This case is dismissed with prejudice.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** October 20, 2009.